UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Aetna Inc., <br><br> Plaintiff <br><br> v. <br><br> All Market Products & Services, LLC, et al., <br><br> Defendants | 2:16-cv-01819-JAD-PAL <br><br> **Order Granting Motion for Temporary Restraining Order and Setting Motion for Preliminary Injunction for Hearing with an Expedited Briefing Schedule** <br><br> [ECF No. 2] |

Aetna, Inc. sues All Market Products & Services, LLC (dba Dental Shield USA), Dental Club America, LLC, Ryan Ousdahl, Andrew D. Ross, Dean Austin, and Wyngate International, Inc. under the Lanham Act[1] for trademark infringement, unfair competition and false designation of origin, and dilution of a famous mark.[2] Aetna moves on an emergency basis for both a temporary restraining order without notice and a preliminary injunction against the defendants. I find that Aetna has met the standard to obtain a without-notice temporary restraint on its claim against the defendants for unfair competition and false designation of origin. I thus grant the motion for temporary restraining order in part and set the motion for preliminary injunction for hearing at 2:00 p.m. on Friday, August 5, 2016, with an expedited briefing schedule.

**Background**

Aetna provides medical-insurance and care plans to individuals and employers.[3] One of the plans that Aetna provides is Aetna Dental Access, which is a discount dental-care program that, for a monthly or annual fee, allows enrollees to obtain dental services at discounted prices

---

[1] 15 U.S.C. §§ 1051, et seq.

[2] ECF No. 1.

[3] *See* ECF No. 2 at 18 ¶ 3.

from participating dental-care providers.[4]  Aetna is the registered owner of the Aetna logo and Aetna, Aetna Dental, and Aetna Dental Access trademarks.[5]

Aetna alleges that All Market Products & Services, LLC is a Nevada limited-liability company that does business as Dental Shield USA.[6]  Aetna is informed and believes that Andrew Ross and Ryan Ousdahl are members of All Market.[7]  Aetna alleges that Dental Club America, LLC is a Nevada limited-liability company.[8]  Aetna attached to its complaint printouts from the Nevada Secretary of State, which I take judicial notice of under FRE 201(b), providing that Ross is the resident agent for both All Market and Dental Club and a managing member of All Market.[9]  The Nevada Secretary of State also lists Ryan Ousdahl as being a managing member of All Market.[10]  Aetna alleges that Wyngate International, Inc. is a Florida corporation,[11] Dean Austin is the owner of Wyngate,[12] and the website www.dentalclubamerica.com is registered to Austin at Wyngate.[13]

Aetna became aware, through consumer complaints,[14] that the defendants were conducting print, web-based, and telemarketing campaigns for their "Dental Shield" and "Dental

---

[4] *Id.* at 18, ¶¶ 4–5.

[5] *Id.* at 15, ¶ 4.

[6] ECF No. 1 at ¶¶ 8–9.

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 11.

[9] *Compare* ECF No. 1 at 18–19 *with* ECF No. 1 at 23–24.

[10] ECF No. 1 at 18–19.

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 18.

[14] ECF No. 2 at 18–19, ¶¶ 6–8.

Club America" programs wherein Dental Shield claimed that it had an exclusive contract with Aetna, had merged with Aetna, or was Aetna,[15] and Dental Club held itself out as an authorized seller of the Aetna Dental Access program.[16] Aetna asserts that Dental Club's and Dental Shield's claims are false.[17] It also asserts that Dental Club and Dental Shield made unauthorized use of Aetna's trademarks in their web-based and print advertisements.[18]

Aetna mailed a letter to the defendants on June 25, 2016, informing them that their conduct was unauthorized and infringed on Aetna's trademarks.[19] Dental Club disabled its website and Dental Shield removed Aetna's trademarks from its website.[20] But Aetna continued to receive complaints that consumers were still receiving telemarketing calls about the Aetna Dental Access program from the defendants' operators.[21] Aetna thus sent a second letter demanding that the defendants cease their infringing activities and to provide documentation regarding their activities of allegedly enrolling individuals in the Aetna Dental Access program.[22] But Aetna's letters were returned as rejected by the recipients and not opened.[23]

## Discussion

**A.    Standard to Obtain Temporary Injunctive Relief Without Notice**

District courts "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" only when "specific facts in an affidavit or a verified complaint

---

[15] ECF No. 2 at 22, ¶¶ 3–4.

[16] *Id.* at ¶ 5.

[17] *Id.* at ¶¶ 4–5.

[18] *See id.* at ¶¶ 6–7.

[19] *Id.* at ¶ 6.

[20] *Id.* at ¶ 7.

[21] *Id.* at ¶ 8.

[22] *Id.* at ¶ 10.

[23] *Id.*

clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition" **and** "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[24] I find that Aetna has met this standard.

The declarations that Aetna submitted from compliance lead Keri Wood and Aetna's lead counsel, William Dolan, demonstrate that immediate and irreparable injury, loss, or damage will result to Aetna before the defendants can be heard in opposition to the motion for temporary restraint. Despite two cease-and-desist letters and telephone conversations between Aetna and the defendants, Wood and Dolan declare that the defendants continue to hold themselves out in telemarketing calls[25] and online-provided "Member Information Guides"[26] as having the authority to sell memberships in the Aetna Dental Access program and as being associated with Aetna. This has caused actual confusion and loss of good will with consumers, who have called Aetna to complain, including to complain about the high volume of telemarketing calls that they have received from the defendants.[27] It has also caused the Indiana Department of Insurance to issue an investigative demand to Aetna in response to a complaint filed by an insured.[28] The insured claims that she received a call from a person claiming to be an agent of both Dental Shield and Aetna offering to enroll her in the Dental Shield referral program, which the agent incorrectly stated was part of the Aetna Dental PPO Network, and that she was repeatedly and fraudulent charged by Dental Shield for the program.[29]

---

[24] FED. R. CIV. PROC. 65(b)(1).

[25] ECF No. 2 at 18–19, ¶¶ 6–7;

[26] *Id.* at 23–24, ¶ 12.

[27] *Id.* at 18–19, ¶ 7.

[28] *Id.* at 19, ¶ 8.

[29] *Id.*

Dolan certifies that he spoke with Scott telephonically on July 29, 2016, about the impending litigation and temporary restraint motion and sought the defendants' consent to a temporary restraining order, expedited discovery schedule, and waiver of service.[30] Scott declined the offer, stating his need to first consult with an attorney.[31]

**B.     Standard to Obtain Injunctive Relief**

The legal standard for issuing a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[32] In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court clarified that the standards "require[ ] a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that [a temporary restraining order] is in the public interest.'"[33] "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[34]

### 1.     *Aetna demonstrated that it is likely to succeed on the merits of its unfair-competition and false-designation-of-origin claim.*

In order to prevail on its claim for unfair competition and false designation, Aetna must show that it has a valid, protectable trademark and that the defendants' use of that mark is likely

---

[30] ECF No. 3 at 8, ¶¶ 2–3.

[31] *Id.* at 8, ¶ 4.

[32] *See Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

[33] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[34] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting with emphasis *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

to cause confusion.[35] Jane Condron, who has served as a paralegal in Aetna's Intellectual Property and Technology Group of Law & Regulatory Affairs department for 18 years, declares that Aetna owns various federally registered marks including the Aetna logo and Aetna Dental Access trademark.[36] Aetna compliance officer Wood declares that consumers have contacted Aetna complaining about the activities of defendants, who have held themselves as being affiliated with or authorized by Aetna to sell memberships in the Aetna Dental Access program.[37] Wood also declares that Aetna has received an investigative demand from the Indiana Department of Insurance regarding a complaint that an insured filed after a person claiming to be an agent of both the defendants and Aetna enrolled her in a program that was incorrectly stated as being part of the "Aetna Dental PPO Network" and repeatedly charged her for the program.[38] Aetna's lead counsel Dolan declares that the defendants used Aetna's marks in online and print advertisements and held themselves out in print, online, and telephonic marketing activities as being associated with Aetna, being Aetna itself, and authorized to enroll people in Aetna's dental program.[39] Dolan declares that all of the defendants' claims and activities are false and unauthorized.[40] Based on this record, I find good cause to believe that Aetna will likely succeed on the merits of its claim of unfair competition and false designation of origin claim against the defendants.

---

[35] *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897–98 (C.D. Cal. 2014) (collecting cases) (also providing that a claim for false designation requires proof of the same elements as a claim for trademark infringement).

[36] ECF No. 2 at 14–15, ¶¶ 1, 4.

[37] *Id.* at 18–19, ¶¶ 6–7.

[38] *Id.* at 19, ¶ 8.

[39] *Id.* at 22, ¶¶ 3–5.

[40] *Id.*

### 2. *Aetna demonstrated that it is likely to suffer irreparable harm.*

"Irreparable harm is traditionally defined as harm for which there is no adequate remedy, such as an award of damages."[41] "In trademark cases, irreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade[,] and loss of goodwill."[42] Aetna has submitted evidence showing that, despite two cease-and-desist letters, the defendants have continued to represent in telemarketing activities that they are affiliated with Aetna and authorized to enroll people in the Aetna Dental Access program. Aetna's evidence shows that consumers have complained to Aetna about defendants' actions (including incessant telemarketing calls) and that the Indiana Department of Insurance is investigating Aetna on a claim from an insured stemming from defendants' activities. The evidence shows that Aetna has already lost some control over its business reputation and goodwill. I find that Aetna has adequately shown that it will likely suffer irreparable harm absent a temporary restraining order.

### 3. *The equities balance in favor of temporary relief.*

Aetna must also establish that "the balance of equities tips in [its] favor."[43] This *Winter* factor requires me to consider the effect that granting or denying temporary injunctive relief will have on each party.[44] The evidence tends to show that none of the defendants has the right to use Aetna's trademarks or to claim an association with Aetna. Aetna has established that it has spent considerable time and resources developing its trademarks and good will.[45] This supports the conclusion that Aetna will suffer irreparable harm if the defendants are permitted to continue using Aetna's trademarks or to claim an association with Aetna or its products and services. A narrowly tailored order temporarily restraining All Market Products & Services, LLC (dba Dental

---

[41] *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v. Canyon Tel. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

[42] *Maxim Integrated Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024 (N.D. Cal. 2009).

[43] *See Winter*, 555 U.S. at 20.

[44] *Id.* at 24 (quoting *Amoco Prod. Co. v. Villate of Gambell, Alaska*, 480 U.S. 531, 542 (1987)).

[45] *See* ECF No. 2 at 15, ¶¶ 3, 5.

Shield USA), Dental Club America, LLC, Ryan Ousdahl, Andrew D. Ross, Dean Austin, and Wyngate International, Inc. (or anyone in privity with them) from using Aetna's trademarks or representing in any medium that they are affiliated with Aetna or that they are authorized to offer enrollment (directly or indirectly) in the Aetna Dental Access program should not have any harmful effect on the defendants.  With this limitation, the equities tip sharply in favor of Aetna.

### 4. *No public interest will be affected.*

The final *Winter* factor requires me "'to consider whether there exists some critical public interest that would be injured by the grant of'" a temporary restraining order.[46]  I do not perceive any critical public interest that would be injured by a narrowly tailored restraining order that prohibits the defendants from utilizing Aetna's trademarks or holding themselves out in any medium as being affiliated with Aetna or having the authorization to enroll people in the Aetna Dental Access program.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that **Aetna's motion for a temporary restraining order [ECF No. 2] is GRANTED.**  All Market Products & Services, LLC (dba Dental Shield USA), Dental Club America, LLC, Ryan Ousdahl, Andrew D. Ross, Dean Austin, and Wyngate International, Inc. including, without limitation, all of their officers, members agents, servants, and employees, and all other persons acting in concert or participation with them who receive actual notice of this order, whether acting directly or indirectly, are temporarily restrained from using Aetna's trademarks or representing in any medium that they are affiliated with Aetna or that they are authorized to offer enrollment (directly or indirectly) in the Aetna Dental Access program.  This temporary restraining order is issued at 12:00 p.m. on Tuesday, August 2, 2016, and expires at 5:00 p.m. on Friday, August 5, 2016, unless it is extended or converted into a preliminary injunction.

---

[46] *See Alliance for the Wild Rockies*, 632 F.3d at 1138 (quoting *Cal. Pharmacists Assn. v. Maxwell-Jolly*, 596 F.3d 1098, 1114–15 (9th Cir. 2010) (internal quotations omitted)).

IT IS FURTHER ORDERED under FRCP 65(c) that Aetna must immediately post a bond in the amount of $1,000 to effectuate this order and recompense the defendants if is later determined that they have been wrongfully restrained.

IT IS FURTHER ORDERED that Aetna must provide telephonic and, if possible, email notice to the defendants that this order has been entered and the deadlines imposed herein, and must also serve the defendants with a copy of the motion for preliminary injunction **[ECF No. 2]** and a copy of this order.

IT IS FURTHER ORDERED that Aetna's motion for preliminary injunction **[ECF No. 2]** will be heard at **2:00 p.m. on Friday, August 5, 2016**, in Courtroom 6 D at 333 Las Vegas Blvd. South, Las Vegas, Nevada 89101. The defendants have until **9:00 a.m. on Thursday, August 4, 2016**, to file a response to that motion. Aetna has until **10:00 a.m. on Friday, August 5, 2016**, to file any reply.

DATED: August 2, 2016.

_____
Jennifer A. Dorsey
United States District Judge